## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **CRIMINAL NO. 6-00-CR-00111-ADA-2** |
| **LADON KENTRELL KING,** | § | |
| *Defendant.* | § | |
| | § | |

## ORDER

Before the Court is Defendant Ladon Kentrell King's ("Mr. King") Motion for Sentence Reduction Under Section 404 of the First Step Act (ECF No. 120), the Government's Response (ECF No. 122), and Mr. King's Reply (ECF No. 123). After consideration of these pleadings and the applicable legal authority, the Motion is **GRANTED.**

### I. Background

Mr. King has served twenty years in prison for possession with intent to distribute "crack" cocaine in an amount involving at least 50 grams. Def.'s Mot. at 1, ECF No. 120. On July 12, 2000, Mr. King rode in the front passenger seat of a maroon Chevrolet Impala traveling at 70 mph in a 65 mph zone. Def.'s Mot. at 2, ECF No. 120. Law enforcement officers removed King and the other passengers from the car and proceeded to search them. *Id.* The officers found 15 grams of marijuana on Mr. King, and later found a bottle of promethazine cough syrup with codeine, unmarked bottles containing the same substance, and some containers of syrup. *Id.* The officers subsequently arrested all passengers and proceeded to discover a clear bag containing

1

47.74 grams of "crack" cocaine as well as a clear bag containing 29.33 grams of powder cocaine. Further, officers found $450.00 in King's possession. *Id.*

A few months later, on October 25, 2000, officers stopped a vehicle with windows tinted darker than allowed by state law. *Id.* King operated the vehicle, and Travis Hall was in the front passenger seat. *Id.* Both King and Hall quickly exited the vehicle and proceeded to flee the area. *Id.* Before running, however, Travis Hall pointed a gun at officers and threw a blue pouch. *Id.* The officers retrieved the blue pouch and the gun and ultimately discovered that there was "crack" cocaine in the pouch. *Id.* Officers arrested Hall and discovered two more bags of cocaine, bringing the total amount of "crack" cocaine found to over 73 grams. Def.'s Mot. at 3, ECF No. 120. Hall claimed that King was the driver of the vehicle and that he received all of his "crack" cocaine from King. *Id.*

Mr. King was charged with possession with intent to distribute at least 50 grams of crack cocaine. *Id.* On May 23, 2001, a jury found Mr. King guilty at trial. *Id.* Hall was charged via separate indictment with the same offense as King. *Id.* Hall pleaded guilty on both counts. *Id.* After debriefing with agents, Hall claimed that he received all the crack cocaine in his possession from King. *Id.* Officers searched multiple places where Hall stayed and located money and crack, which Hall further attributed to King. *Id.*

Based on Hall's claims, the PSR attributed all of the crack found on Hall to King and recommended that King be held accountable for 153.12 grams of crack cocaine, which was converted to 3,067 kilograms of marijuana equivalency for a base offense level 34. Gov.'s Resp. at 3, ECF No. 122. The PSR also added a 2 level enhancement for Hall's possession of the firearm because Hall claimed King told him to take the gun. *Id.* The PSR further added a 3-level

enhancement for creating a risk to law enforcement officers due to Hall pointing a gun at law enforcement during the traffic stop. *Id.*

Mr. King's attorney filed several objections to the PSR, however, the Court only granted one of these in finding that the 47.74 grams of crack found near Mr. King in the Madison County case in July 2000 was not relevant conduct. Def.'s Mot. at 4, ECF No. 120. This lowered the offense level to 37, and it lowered his criminal history to category II. *Id.* At this offense level and criminal history category, the guideline range was 235 to 293 months. *Id.* Within the indictment, the allegation was a quantity of crack cocaine larger than 50 grams. *Id.* At that time, the alleged quantity carried a sentencing range of ten years to life. *Id.* King moved to reduce his sentence pursuant to 18 U.S.C. 3598(c)(2), and the court reduced his sentence to 151 months. *Id.* Shortly thereafter, the court further reduced King's sentence to 121 months. Mr. King's sentence was also to be followed by an eight-year term of supervised release.

Further, under state custody, King was sentenced to life in prison for possession with intent to distribute a controlled substance. *Id.* King has subsequently been paroled from state custody on his life sentence and now serves time under the Bureau of Prisons. Mr. King has a projected release date of February 9, 2021. *Id.*

## II.  Legal Standard

### A.  Fair Sentencing and First Step Acts

In 2010, Congress enacted the Fair Sentencing Act ("FSA"). The FSA was an effort to reduce sentencing disparities between cocaine base offenses and powder cocaine offenses. *Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). Section 2 of the FSA modified the statutory penalties for offenses involving cocaine base by increasing the quantity of cocaine base

necessary to trigger 21 U.S.C. § 841(b)(1)(A)'s ten-year mandatory minimum from 50 to 280 grams.

On December 21, 2018, the First Step Act of 2018 became law, introducing a number of criminal justice reforms. *See generally* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5194-249 (2018). Applicable here, Section 404 of the First Step Act concerns the "application of [the] Fair Sentencing Act" of 2010. *Id.* at 5222. The 2018 Act made Section 2 of the FSA retroactive for a particular group of defendants sentenced prior to the FSA's enactment. Section 404 of the First Step Act provides:

(a) DEFINITION OF COVERED OFFENSE. – In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED. – A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS. – No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018).

## B. First Step Act Application

The First Step Act grants a district judge limited authority to consider reducing a sentence which was previously imposed. The calculations that had been made earlier under the Sentencing

Guidelines are adjusted "as if" the lower drug offense sentences were in effect at the time of the commission of the offense. The express provisions of the First Step Act provide this Court with the authority to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed."

First Step Act § 404(b). The Fifth Circuit has given district Courts the following guidance:

> "[t]he mechanics of First Step Act sentencing are these. The district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act. It is easier to understand the district court's action as imposing, not modifying, a sentence because the court is conducting the sentence as if all the conditions for the original sentencing were again in place with the one exception. The new sentence conceptually substitutes for the original sentence, as opposed to modifying that sentence."

See United States v. Hegwood, 934 F.3d 414, 418–19 (5th Cir. 2019) (rejecting defendant's contention that the district court erred in refusing to apply Fifth Circuit precedent from 2017 to remove his career offender enhancement imposed in 2008).[1]

If a district court determines that a defendant is eligible for relief under the First Step Act, the district court may exercise discretion to reduce the defendant's sentence. The Act provides: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c). Courts construe this provision to mean that a district court has discretion whether to reduce a sentence imposed upon a defendant who was sentenced prior to the enactment of the Fair Sentencing Act. Ladd v. Kallis, No. 10-CV-1062, 2019 LEXIS 62958, at *2 (C.D. Ill. Apr. 12, 2019) (holding that the Act gave courts discretion to resentence individuals who had been sentenced prior to the Fair Sentencing Act); United States v. Glore,

---

[1]"This appeal concerns the First Step Act, in which Congress permitted a sentencing court to "impose a reduced sentence as if . . . the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed. The issue is whether district courts are authorized to conduct a plenary resentencing, which would include recalculating the Sentencing Guidelines range as if the defendant were being sentenced for the first time under present law, or whether courts are limited to reductions resulting from the Fair Sentencing Act. Concluding that the First Step Act does not allow plenary resentencing, we AFFIRM." Hegwood, 2019 WL 3729590, at *1–2.

371 F. Supp. 3d 524, 2019 WL 1060838, at *2 (E.D. Wis. 2019) (same); *United States v. Davis*, No. 07-CR-245S(1), 2019 LEXIS 36348, at *3 (W.D.N.Y. Mar. 6, 2019) (same).

### III.  Discussion

The Court must ask two questions when considering a motion to reduce a sentence under the First Step Act. The first is whether the defendant is eligible for a reduced sentence. *See* First Step Act § 404(b). If the defendant is eligible, the second question is whether to reduce the sentence and what an appropriate sentence would be if the Fair Sentencing Act had been in effect when the defendant committed the offense. *See id.* In its response to King's Motion, the Government concedes that King is eligible for sentence reduction under the First Step Act. Gov.'s Resp. at 4, ECF No. 122. However, the Government opposes any reduction in King's sentence. *Id.*

#### Eligibility

King contends that his offense is a covered offense under Section 404, as he committed the offense before August 3, 2010, and Section 2 modified the statutory penalties applicable to his offense. Def.'s Mot. at 4, ECF No. 120. Specifically, King committed his offense before August 3, 2010, and the statutory penalties applicable to his offense were modified by Section 2 of the Fair Sentencing Act, which "reduced the statutory penalties for cocaine base offenses" to "alleviate the severe sentencing disparity between crack and powder cocaine." *United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). As relevant here, Section 2 of the Fair Sentencing Act increased the quantity of cocaine base required to trigger the statutory penalties set forth in 21 U.S.C. § 841(b)(1)(A) from 50 grams to 280 grams. *United States v. Laguerre*, 5:02-CR-30098-3, 2019 WL 861417, at *3 (W.D. Va. Feb. 22, 2019). The exclusions under Section 404(c) do not

apply to Mr. King because his sentence has not been previously reduced under the FSA, and this Court has not previously denied a motion to reduce his sentence under the Act.

The First Step Act authorizes the retroactive application of the FSA. *See* First Step Act § 404(c). Courts are to review the quantity of drug alleged in the indictment and found by a jury beyond a reasonable doubt to determine the current statutory penalties. *See Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000); *Alleyne v. United States*, 570 U.S. 99, 113–14 (2013); *United States v. Dodd*, 372 F. Supp. 3d 795, 797-98 ("Both *Apprendi* and *Alleyne* are binding on this Court for sentencings held today. That these procedural rules do not trigger a right to relief retroactively on collateral review . . . is distinct from whether they apply to proceedings independently authorized under the First Step Act") (internal citations omitted); Order, *United States v. Torrence Allen*, No. 95-6008, p. 7 (S.D. Fla. Apr. 15, 2019), ECF No. 94 (applying *Alleyne* and *Apprendi* because "[w]hen Congress enacts a statute, it may be presumed that Congress is aware of relevant judicial precedent").

Mr. King's indictment claims he possessed with intent to distribute "at least 50 grams of cocaine base," not at least 280 grams. Def.'s Mot. at 4, ECF No. 120. This amount of "crack" underlying King's conviction is within the range amended by section 2 of the Fair Sentencing Act. Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2373 (2010). Specifically, section 2 amended 21 U.S.C. § 841(b)(1)(B) by changing the threshold amount of crack from 5 grams to 28 grams and 21 U.S.C § 841(b)(1)(A) by changing the threshold amount of cocaine base from 50 grams to 280 grams. *Id.* Thus, applying the Fair Sentencing Act retroactively to his case means he would no longer be subject to the statutory penalties of § 841(b)(1)(A), but would instead be subject to the penalties set forth in § 841(b)(1)(B). *Id.* Under that provision, King's statutory sentencing range is 5 to 40 years and a supervised release term of at least four years.

Further, both parties agree that King is not barred from seeking reduction by the limitations provided in § 404(c) of the First Step Act. Gov.'s Resp. at 4–5, ECF No. 122.

### A. Discretion

Sentence reduction is consistent with the congressional intent of the First Step Act. *See, generally, United States v. Gregory Allen*, No. 8:00-cr-378-T-26AAS, ECF No. 69, (M.D. Fla. Feb. 19, 2019). The question is whether this Court should exercise the discretion that Congress has afforded it within this case. The Government concedes that King is eligible for a sentence reduction, but they argue that this Court should refrain from exercising its discretion under section 404(c) of the First Step Act. Government's Resp. at 6–9, ECF No. 122.

In determining whether to reduce King's sentence, the Court considers the section 3553(a) factors, along with any and all relevant post-conviction conduct, to impose a new sentence under the First Step Act that is enough but not greater than necessary. *See Pepper v. United States*, 562 U.S. 476, 480 (2011). The Government proffers one main argument as to why the Court should not exercise discretion in favor of reduction. The Government relies upon King's Criminal History combined with the seriousness of his offense to show that Mr. King was not just a one-time crack offender "whose sentence far outweighed the scope of his criminal activity." Gov.'s Resp. at 7, ECF No. 122. However, Mr. King counters these arguments by showing that most of the charges were either dropped or dismissed. In the context of the 3553(a) factors, although the Government indicates that many of these prior charges were dismissed due to Mr. King's prior sentencing, they do not show that Mr. King is likely to recidivate upon release from prison. Mr. King has been in prison for two decades, and none of the charges that

the government points out occurred during that time. Therefore, the Court finds that the prior criminal history of Mr. King does not weigh against him for the purposes of resentencing.

King has spent the last 20 years of his life incarcerated in either federal prison or state prison. Def.'s Resp. at 9, ECF No. 120. During those 20 years, Mr. King has engaged in several rehabilitative efforts, including acquiring a GED and completing classes in crochet, parenting, anger management, and stress management. ECF No. 120, Ex. 1. However, to discount Mr. King's history of good behavior while incarcerated, the Government cites several disciplinary actions. These disciplinary actions include a 2013 incident in which Mr. King was sanctioned for "possession of large amount[s] of onions," a 2013 incident for "[possession] of 70 gambling tickets," a 2014 incident for "using another [inmate's] telephone account," and a 2018 incident in which Mr. King was sanctioned for "possessing drugs/alcohol." ECF No. 122, Ex. 2. The Government states that King was sanctioned "for the very same criminal act for which he was sentenced in this court." Gov.'s Resp. at 9, ECF No. 122. Defendant argues that this is misleading because Mr. King was sentenced for crack cocaine possession with intent to distribute, not marijuana possession. Def.'s Resp. at 9, ECF No. 123.   The Court agrees. Although Mr. King did get sanctioned for marijuana and alcohol possession in 2018, the rest of his record indicates that he has made a good faith effort to rehabilitate himself and put himself in a proper position to re-enter society. One contraband disciplinary action does not outweigh Mr. King's commendable efforts to gain valuable skills and knowledge throughout his time in corrections facilities. The other incidents shown by the government are minor disciplinary issues that fail to eclipse Mr. King's education and rehabilitation efforts.

The Court has carefully considered the amount of time King has served and considers Congress's explicit intention "to limit government spending on incarceration and to decrease the

number of inmates in federal custody." *See United States v. Simmons*, 2019 WL 1760840, at *6 (E.D.N.Y. Apr. 22, 2019). Further, the Court has considered the unique circumstances surrounding Mr. King in light of the current COVID-19 pandemic within the context of his remaining sentence. Mr. King is serving his sentence at FCI Beaumont Low. As of July 23, 2020, there are 1,888 inmates within this facility, 463 of those who have tested positive with COVID-19. Mr. King is scheduled to be released from prison in February of 2021, roughly six months from the current date. Def.'s Mot. at 4, ECF No. 120. Therefore, given that Mr. King has only six months before release, the Court finds that a reduced sentence is justified. The Court is not reducing Mr. King's sentence wholly upon recognizing the risk associated with being an inmate during the COVID-19 pandemic. Rather, in the specific context of Mr. King's remaining sentence and the time that Mr. King has already served, a reduction in Mr. King's sentence by six months is justified and remains in line with the factors as listed in 3553(a).

Under 18 U.S.C. § 3553(a), the Court considers the need for the sentence to reflect the seriousness of the offense and adequate deterrence from future criminal conduct. Twenty years is undoubtedly sufficient time to reflect the seriousness of the offense. Further, resentencing Mr. King with six months less than the sentence he is currently serving would make little difference in the deterrence effect of his sentence as a whole. When considering the 3553(a) factors combined with the history of the defendant and the circumstances surrounding his incarceration, the Court finds that the time Mr. King has served is adequate to promote respect for the law and has provided a just punishment for the offense that he committed.

### IV.  Conclusion

Having considered 18 U.S.C. § 3553(a); the United States Sentencing Guidelines in an advisory capacity; and the Guidelines policy statements pursuant to the Sentencing Reform Act,

the Court finds that a sentence reduction is appropriate in Mr. King's case. Furthermore, to prevent the spread of COVID-19 and to protect public health, there is a need for the Defendant to be quarantined prior to release, unless he has already undergone quarantine. To accommodate the need for quarantine, this Court should advise the parties of its decision while retaining jurisdiction over the motion for 14 days. BOP will then place Defendant in quarantine. If Defendant has not displayed symptoms or tested positive for COVID-19 for a period of 14 days, this Court's sentence-reduction order will then issue. If Defendant instead tests positive during the 14-day period, the government will notify the Court and seek an extension of any release date until Defendant has tested negative and displayed no symptoms for at  least 14 days. Accordingly, it is hereby **ORDERED**:

1)  Defendant Ladon Kentrell King's Motion to Reduce Sentence is **GRANTED**;

2)  Mr. King's sentence is reduced to a **TIME-SERVED SENTENCE**;

3)  King's term of supervised release on Count One is reduced from five (5) years to four (4) years;

4)  Any pro se motion(s) that the Defendant filed under Section 404 of the First Step Act prior to the date of this Order is/are dismissed as moot in light of the relief granted in this Order;

5)  Defendant must be quarantined and show no symptoms of COVID-19 for a period of 14 days prior to release. After these 14 days, if Defendant has not tested positive for COVID-19, the Court's sentence reduction will issue.

6)  All other terms and provisions of the original judgment remain in effect; and

7)  The Probation Office shall provide a copy of this Opinion and Order to the Bureau of Prisons.

**SIGNED** this 27th day of July, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE